ON REHEARING EX MERO MOTU
ADAMS, Justice.
Our opinion of September 28, 1990, is withdrawn and the following is substituted therefor.
Mary E. Buffler appeals from an order terminating the guardianship and special conservatorship imposed on her and appointing a limited conservator. Although the trial court terminated the previously imposed guardianship and conservatorship and held that she was no longer non compos mentis, the judge appointed a limited conservator to control all of Miss Buffler’s funds in excess of $100,000 and all of her real estate. Although James A. Buffler and Juliet B. Eckl filed what purported to be a cross-appeal, they do not challenge the trial court’s judgment; instead, they defend that judgment imposing a limited con-servatorship. We reverse.
The facts relevant to this appeal are as follows: Mary E. Buffler was adjudicated non compos mentis in 1970, and a guardian was appointed for her. In June 1988, the guardian appointed by the probate court in 1970 died. In August 1988, Mary Buffler petitioned the Circuit Court of Lauderdale County for the appointment of a special conservator, a final accounting by the executrix due to the death of the guardian, a protective order, and a termination of the guardianship and a return of her assets. On August 1, 1988, the trial court appointed a special conservator over the estate of the deceased guardian. The court reserved consideration on the issues of competency and the guardianship until those issues could be tried. In January 1989, James A. Buffler and Juliet B. Eckl, Miss Buffler’s brother and sister, petitioned the court to intervene in the matter. They maintained that Miss Buffler was not able to manage her estate and asked that the court deny the petition to terminate the guardianship and that they be appointed as conservators to protect her estate. The trial court granted their petition and the case was set for a final hearing.
On October 11, 1989, the issue of terminating the conservatorship was tried, without a jury. The trial court held that Mary Buffler was no longer non compos mentis; it terminated the guardianship imposed in 1970 and the special conservatorship imposed in 1988; and it held that Mary Buf-fler was unable to manage her affairs effectively and therefore imposed a limited conservatorship to have control over all her funds in excess of $100,000 and over her real estate.
There was no substantial evidence that Mary Buffler could not manage her business affairs effectively by reason of: (a) mental illness; (b) mental deficiency; (c) physical illness or disability; (d) physical or mental infirmities accompanying advanced age; (e) chronic use of drugs or chronic intoxication; or (f) confinement, detention by a foreign power, or disappearance. But the trial court did find that Mary Buffler *906 was unable to manage her property and business affairs effectively, for reasons set forth in Ala.Code 1975, § 26-2A-130(c) and, further, that she had property that would be wasted or dissipated unless property management was provided.
The two medical experts who testified in the case testified that Miss Buffler did not need anyone to manage her affairs. One of these medical experts, Dr. Myree, who had followed Miss Buffler’s case since October 1970, when a guardian was appointed for her, testified that people in those days got into Bryce Hospital (a state psychiatric hospital) in “funny ways.” He said he doubted that Miss Buffler should have been sent to Bryce Hospital or that a guardian should have been appointed for her when the appointment was originally made. Miss Buffler subscribes to and reads Time, Newsweek, Atlantic Monthly, Southpoint, and Better Homes and Gardens magazines. She has an intelligence quotient of 130. Although she has problems with mild depression, she does not neglect taking her medication. She understands the effect of capital gains tax in the event she should sell any of her property, and she has kept up with the effect of a proposed reduction in the capital gains tax, as well as the economic effect the new NASA solid rocket fuel plant being built nearby will have on the value of her property.
Miss Buffler testified that her estate is worth greatly in excess of $2,000,000 dollars. She stated that she would like to manage her own affairs, and that it is degrading and insulting to be required to beg for one’s own money.
The record indicates that she is able to add and subtract perfectly, that she dresses neatly, and that she mixes very well socially. There is no evidence that would compel, under the statute, the appointment of a conservator. The intervenors contend that because of her mental depression, there is an “outside chance” that she could waste some of her money. They are her brother and sister and, ostensibly, would be the recipients of her estate if she were to die. However, 10,000,000 Americans suffer from some kind of clinical depression and still manage their own affairs.
We do not believe that a perfectly sane person who is above normal in intelligence and who has adjusted very well for more than 50 years of her life should be placed under a guardianship and, in this case, not even under a conservatorship.
Therefore, the judgment is reversed and the cause is remanded for the entry of a judgment consistent with this opinion.
89-512 ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
89-513 ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and ALMON and SHORES, JJ., concur.
HOUSTON, J., concurs specially.
MADDOX and STEAGALL, JJ., dissent.